UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TERRELL BLODGETT, TEXAS YOUNG DEMOCRATS, and TEXAS COLLEGE DEMOCRATS,<br>    *Plaintiffs*,<br><br>v.<br><br>RUTH R. HUGHS, in her official capacity as Texas Secretary of State,<br>    *Defendant*. | Civil Action No. 1:19-cv-01154 |

**ORIGINAL COMPLAINT**

The Plaintiffs, by and through undersigned counsel, allege as follows:

**Preamble: Nature of action**

1.  Until the November 2019 election, and for many years before, Texas election officials were able to use temporary polling places to enhance early voting opportunities for registered voters in the State. Use of these temporary polling places was particularly beneficial to elderly voters with mobility difficulties and to young voters attending college and lacking reliable transportation alternatives. These temporary polling places were an especially cost-effective way for local election officials to try to make the voting process more open and available in locations where access might otherwise have been limited. Travis County, for example, had approximately sixty temporary voting locations in operation for the 2018 elections.

2.  The 86th Texas Legislature effectively ended this vital and beneficial program in its 2019 regular session when it enacted, and the Governor signed, House Bill 1888 ("HB 1888"). This legislation took effect on September 1, 2019, in time for the November 2019 elections and, from that point forward, effectively eliminated or severely curtailed use of temporary polling places. HB 1888's mechanism for this attack on temporary polling places was the addition of a new requirement to Section 85.064 of the Texas Election Code. A new subsection (b)(1) inserted by Section 5 of HB 1888 adds the requirement that a temporary polling place may not be used unless it will be used for the same number of days as the main early voting place and for at least 8 hours on each of those days. In other words, the "temporary" nature of polling places for early voting was obliterated and with that obliteration so was their usefulness as a cost-effective tool for enhancing turnout among legislatively-targeted segments of registered voters, specifically including young voters and elderly voters with impaired mobility.

3.  This lawsuit seeks invalidation of HB 1888—specifically its Section 5—on federal statutory and constitutional grounds. The next major election in Texas is the March 3, 2020, primary, which is the first step in a process leading to the election of, among others, a United States President, a United States Senator from Texas, and thirty-six Texas members of the United States Congress. Early voting in the primaries opens on February 18, 2020, and Plaintiffs seek to have HB 1888's Section 5 effective ban on temporary polling places judicially lifted before then.

**Jurisdiction and venue**

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). Plaintiffs seek declaratory, injunctive, and related relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. §§ 1983 and 1988. The constitutional claims in this matter arise under the First, Fourteenth, and Twenty-Sixth Amendments to the United States Constitution and are asserted through 42 U.S.C. § 1983. The statutory claim in this matter arises under Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA"), including 42 U.S.C. §§ 12101 and 12132, and is asserted through 42 U.S.C. § 1983.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 124(d)(1) and 1391(b). Defendant's official place of business is in Austin, Texas, and a substantial part of the events or omissions giving rise to the asserted claims occurred in Travis County, Texas.

**Parties**

*Plaintiffs*

6. Plaintiff Terrell Blodgett is a resident and registered voter in the City of Austin. He is 96 years old, disabled, and lives at the Westminster senior living facility in Austin.

7. Plaintiff Texas Young Democrats ("TYD"), an unincorporated association, is a statewide, youth-based organization whose members, numbering about 6,000 in 2018, are in the age range of 14-40 years. It currently has 21 chapters across the State. Its principal organizational activities include electoral work such as seeking to

encourage and further state and local government actions to increase and enhance voter turnout, particularly among its college members. Its membership includes Texas residents who live on or near college campuses in Travis and Hays Counties, are registered to vote, and have limited transportation options.

8. Plaintiff Texas College Democrats ("TCD"), an unincorporated association, is a youth-based organization that trains and develops leaders who politically organize on their college campuses and in the college community more generally. One of its organizational objectives is to encourage and further state and local government actions to increase and enhance voter turnout, particularly among TCD members. It has more than 20 on-campus chapters, totaling about 1,000 members, most (if not all) of whom are registered to vote and many of whom have limited transportation options.

*Defendant*

9. Defendant Ruth R. Hughs is the Secretary of State of the State of Texas. She is sued in her official capacity. She is the State's Chief Election Officer, responsible for administering the Election Code, including the provisions as amended by HB 1888, and helping to ensure uniform application and interpretation of election laws across the State. Tex. Elec. Code § 31.001(a). She may be served with process at the Secretary of State's Office, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

**Factual background**

10. Before HB 1888's imposition of restrictions on temporary polling places for early voting,* election administrators across the State had increasingly deployed temporary polling places as an effective, cost-efficient tool to reach eligible, registered voters who faced hurdles to actually casting their votes due to mobility and transportation limitations and hurdles. Would-be voters at both the young and the old ends of the age spectrum were particularly benefited by this helpful tool for enhancing operation of the democratic process of elections.

11. Aided by growing use of the temporary polling place tool, turnout surged in the 2018 elections, especially for the young and old. Increased turnout in 2018 was reflected in improved performance and increased success of Democratic candidates for office.

12. Reacting to the 2018 elections, the Republican-controlled Texas Legislature took steps to blunt or at least shrink the threat the results posed to its members' political interests posed. A prime target of the legislative effort to damage the health and vibrancy of the electoral franchise was use of temporary polling places for early voting. It had proven so effective at improving turnout among those voters perceived as posing a threat to the State's long-dominant political party that a policy decision

---

* This phrase "temporary polling place for early voting"—sometimes shortened to "temporary polling place" or called "mobile voting locations"—in this complaint refers to "temporary branch polling place" specifically defined in Tex. Elec. Code § 85.062(g).

was made to whittle away at the threat by eliminating one of the electoral mechanisms. HB 1888, particularly Section 5 of that bill, was the vehicle chosen by the Legislature.

13. The proffered excuse for HB 1888's targeting of the use of temporary polling places for early voting was their use in school bond elections. But the legislation reached well beyond the proffered excuse—that is, voting on measures such as school bonds— and instead extended its curtailment of temporary polling places to *all* kinds of elections, including those of candidates for federal, state, and local electoral representative offices. Tossed aside was testimony and legislative counter-argument and amendments about the fiscal harm from the bill's effective elimination of temporary polling places by rendering their use ineffective cost-wise, and about the availability of rifle-shot legislative carve-outs allowing continued use of temporary polling places at special residences for the elderly and at college campuses.

14. The Secretary of State describes the operation of HB 1888's Section 5 amendment to the Election Code:

> The temporary polling place(s) must remain open for each weekday of the early voting period that the main early voting polling place will be open. The temporary branch polling place(s) must be open at least eight hours each day, unless the city or county are not serving as the early voting clerk and the territory holding the election has less than 1000 registered voters, in which case the temporary branch polling places must be open for at least three hours each day. (Secs. 85.062; 85.064).
>
> NEW LAW NOTE: HB 1888, as enacted by the 86th Legislature (2019), amended Section 85.064 to require that early voting at temporary branch polling places must now be conducted on the days that early voting is required to be conducted at the main early voting polling place under 85.005 (i.e. each weekday of the early voting period that the main location will be open) and must remain open for (1) eight hours each day, or (2) three hours each day if the city or county clerk does


not serve as the early voting clerk for the territory and the territory has fewer than 1000 registered voters.

https://www.sos.state.tx.us/elections/laws/advisory2019-16.shtml#nov30.

15. The Secretary of State's description of the legislation's operation is not, however, a description of its purpose and effect on voters. Upon information and belief, and based on a review of the available public record as well as the legislation's actual impact on Plaintiffs and the affected members of the organizational plaintiffs, a motivating purpose of HB 1888 was to disadvantage young and old voters confronted with transportation hurdles by burdening their exercise of the electoral franchise. And the legislation was effective in accomplishing this purpose.

16. Terrell Blodgett is an inveterate voter and has long been deeply involved in public affairs and the political issues that are part and parcel of such matters. Before HB 1888's elimination of the use of temporary polling places, he had voted in every election since he graduated from Baylor University, then turned 21 in 1944. After serving in the United States Army and obtaining a Masters in Public Administration from Syracuse University, Mr. Blodgett returned to Texas. He was at the University of Texas's Bureau of Municipal Research, then served as an Assistant City Manager for the City of Austin in the 1950-60 period. Then he served as City Manager for Waco for three years and Garland for a year. Subsequently, he worked on the staff of Texas Governor John Connally for three years. Later, from 1982-1995, he was a chaired Professor at the University of Texas's LBJ School of Public Affairs.

17. For the last decade or so, Mr. Blodgett has lived at the Westminster senior living facility in West Austin. For the 2018 election, and for several elections before

then, the Travis County elections office set up a mobile voting location at the Westminster facility. It would be open for one day during early voting, and hundreds of voters residing at Westminster could and would cast their ballots onsite. The on-site location, with four or five voting stations, would be open until 1:00 p.m., and lines would form for people waiting to vote.

18. With the advent of HB 1888, the mobile voting location was not available at Westminster for the November 2019 election. Because of its absence, combined with his disability, Mr. Blodgett missed voting for the first time in 75 years. He does not want to miss voting again, starting with the party primaries in March 2020.

19. Mr. Blodgett is now disabled. His mobility is severely limited because of problems with his knees and his heart. (He has had multiple heart procedures, including insertion of stents.) He uses a three-wheel electric scooter to get around, supplemented by use of a cane or walker. Without his scooter, his mobility is severely impaired. But the scooter is unwieldy and difficult to take to a regular polling location. Voting, though, is of special importance to him, and he seeks to continue participating in elections as fully as possible, which to him means voting in person so that the civic participation takes on deeper meaning.

20. The post-HB 1888 facilities for early voting in person are effectively inaccessible and unusable by Mr. Blodgett because of his disabilities. It excludes him from participation in voting, and it is Mr. Blodgett's view, informed by many, many years of public service and civic engagement, that the temporary polling place restrictions put in place legislatively by HB 1888 are both effectively and purposely directed at

him and those situated similarly to him (including numerous other registered voters living at Westminster) for discriminatory reasons.

21. The TYD and its members, as well as the TCD and its members, likewise are targeted and disadvantaged by HB 1888 in their efforts to expand exercise of the electoral franchise, but the harm to them and their organizational interest is not due to disability and old age. It is because of youth and inaccessibility to ready transportation. HB 1888 both effectively and purposely is directed at these two organizations and their members, as well as those similarly situated in terms of the opportunity to vote.

22. TYD members were unable to vote in the November 2019 election because of HB 1888's restrictions on the use of mobile voting locations. For example, at three different college campuses in Austin where there are TYD constituents—Huston-Tillotson University, St. Edward's University, and Austin Community College—mobile voting locations that had been available and used by TYD voters in the 2018 elections were no longer available for use in the November 2019 election.

23. TCD members were similarly disadvantaged in their exercise of the electoral franchise. Permanent voting locations at many college campuses in the State where TCD members live and attend school are hard to come by because many campuses are in medium-sized cities and counties without sufficient resources to locate a polling location on campus for the full two weeks of early voting. For example, at the University of Texas at Arlington, TCD members and other students had access to a mobile voting site through the 2018 elections. With passage of HB 1888, the campus lost the

mobile voting site for the November 2019 elections. Many students, including TCD members, lacked transportation access to other permanent polling locations, and turnout lessened significantly. As another example, students and TCD member at Rice University faced a similar problem. The mobile voting location that had been made available on campus in the 2018 elections was not made available for the 2019 election.

24. For the upcoming 2020 election cycle, and for as long as HB 1888 and its Section 5 restriction on the use and availability of temporary polling locations continues in effect, Plaintiffs and organizational plaintiff members will continue to have their ability to vote discriminatorily abridged.

**Causes of action**

*Count 1: First Amendment (through 42 U.S.C. § 1983)*

25. ¶¶ 1-24 are incorporated.

26. HB 1888, including its Section 5 amendment to Tex. Elec. Code § 85.064, significantly and unduly restricts the access of Plaintiffs and the organizational plaintiffs' members to the franchise without relevant and legitimate state interests of sufficient weight to justify the restriction. The restriction thus violates Plaintiffs' First Amendment right to vote, as applied to the State through the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*Count 2: Fourteenth Amendment-Equal Protection (through 42 U.S.C. § 1983)*

27. ¶¶ 1-24 are incorporated.

28. HB 1888, including its Section 5 amendment to Tex. Elec. Code § 85.064 with respect to temporary polling places, is grounded in a "desire to harm" youth coming of voting-age and the elderly facing increasing mobility hurdles because of their political tendencies, and its relationship to the asserted goal of the Texas Legislature is "so attenuated as to render" irrational its effective elimination of temporary polling places to the detriment of Plaintiffs and those registered voters who are similarly-situated. *Cleburne Living Ctr. v. City of Cleburne,* 473 U.S. 432, 446-47 (1985). The restriction, and the line drawn in HB 1888's Section 5, thus violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### *Count 3: Twenty-Sixth Amendment (through 42 U.S.C. § 1983)*

29. ¶¶ 1-24 are incorporated.

30. HB 1888, including its Section 5 amendment to Tex. Elec. Code § 85.064 with respect to temporary polling places, was enacted with the intent, and has the effect, of preventing youth coming of voting-age and the elderly facing increasing mobility hurdles from being able to effectively exercise their right to vote. By erecting onerous requirements that effectively handicap exercise of the franchise by Plaintiffs, the restrictions of HB 1888's Section 5 constitute an abridgement of Plaintiffs' vote on account of age in violation of the Twenty-Sixth Amendment to the United States Constitution.

### *Count 4: Title II, Americans With Disabilities Act, 42 U.S.C. §§ 12101 and 12132 (through 42 U.S.C. § 1983)*

31. ¶¶ 1-24 are incorporated.

11

32. HB 1888, including its Section 5 amendment to Tex. Elec. Code § 85.064 with respect to temporary polling places, was enacted with the intent, and has the effect, of making access to voting facilities inaccessible and unusable by Plaintiff Blodgett. The state statute's restrictions subject him to discrimination on the basis of his disability in his exercise of the right to vote, thus violating Title II of the ADA, including 42 U.S.C. §§ 12101 and 12132 and ADA implementing regulation 28 C.F.R. § 35.149.

**Prayer for Relief**

33. Based upon the foregoing matters, Plaintiffs respectfully request that this Court accept jurisdiction over this action and grant them the following relief:

   a. declare HB 1888, insofar as its Section 5 amends Tex. Elec. Code § 85.064(b) to restrict the availability of temporary polling places to Plaintiffs and members of the organizational plaintiffs, in violation of the United States Constitution's First, Fourteenth, and Twenty-Sixth Amendments and of Title II of the Americans With Disabilities Act;

   b. issue preliminary and permanent injunctive relief, prohibiting Defendant, her officers, agents, employees, attorneys, successors in office, and all persons in active concert or participation with her from further maintenance, implementation, or enforcement of HB 1888 insofar as its Section 5 amends Tex. Elec. Code § 85.064(b) to eliminate or severely restrict the availability of temporary polling places to Plaintiffs and members of the organizational plaintiffs;

   c. under 28 U.S.C. § 1920, 42 U.S.C. §§ 1988(b), 42 U.S.C. § 12205, and Fed.R.Civ.Proc. 54(d), award Plaintiffs their reasonable attorney fees, litigation expenses, and costs incurred in bringing and prosecuting this action; and

   d. grant Plaintiffs such other and further relief as may be necessary, appropriate, and equitable.

Case 1:19-cv-01154-LY   Document 1   Filed 11/26/19   Page 13 of 13

Respectfully submitted,


___/s/ Renea Hicks_____
Renea Hicks
Attorney at Law
Texas Bar No. 09580400

LAW OFFICE OF MAX RENEA HICKS
P.O. Box 303187
Austin, Texas 78703-0504
(512) 480-8231
fax (512) 480-9105
rhicks@renea-hicks.com



___/s/ Michael Siegel_____
Michael Siegel, Esq.
P.O. Box 2409
Austin, TX 78701
(737) 615-9044
siegellawatx@gmail.com

ATTORNEYS FOR PLAINTIFFS TERRELL BLODGETT, TEXAS YOUNG DEMOCRATS, AND TEXAS COLLEGE DEMOCRATS

13