**IN THE UNITED STATES DISTRIC COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| TERRELL BLODGETT; TEXAS YOUNG DEMOCRATS; TEXAS COLLEGE DEMOCRATS, | |
| *Plaintiffs*, | |
| v. | CIVIL ACTION NO. 1:19-cv-01154 |
| RUTH R. HUGHS, in her official capacity as Texas Secretary of State, | |
| *Defendant*. | |

**THE TEXAS SECRETARY OF STATE'S MOTION TO DISMISS**

Introduction ................................................................................................................................. 1

Background ................................................................................................................................... 2

Argument ...................................................................................................................................... 3

    I.    The Secretary of State Is Not a Proper Defendant .................................................. 3

        A.    The Secretary Does Not Determine Voting Sites or Enforce HB 1888 ............... 3

        B.    Plaintiffs Cannot Overcome Sovereign Immunity ............................................... 4

        C.    Plaintiffs Do Not Have Standing to Sue the Secretary ...................................... 5

    II.    Plaintiffs Lack Standing to Challenge HB 1888 ..................................................... 6

        A.    Blodgett Has Not Alleged an Injury in Fact ...................................................... 7

        B.    The Texas Young Democrats and Texas College Democrats Lack Standing ...... 8

        C.    The Texas Young Democrats and Texas College Democrats Lack Statutory Standing .. 10

    III.    HB 1888 Is Constitutional ...................................................................................... 11

        A.    HB 1888 Makes Voting Easier and Does Not Burden the Right to Vote ......... 11

        B.    Plaintiffs' Equal Protection Claim Also Fails ................................................... 17

        C.    HB 1888 Does Not Violate the Twenty-Sixth Amendment ............................. 18

        D.    HB 1888 Does Not Violate the ADA .............................................................. 19

Conclusion ................................................................................................................................. 20

## INTRODUCTION

On November 26, 2019, Plaintiffs brought this suit challenging the constitutionality of HB 1888.[1]  Plaintiffs are Terrell Blodgett, a 96-year-old man who contends his preferred early voting polling location may be unavailable in 2020; the Texas Young Democrats; and the Texas College Democrats. *See* Original Complaint ("Compl.") ¶¶ 6–8, ECF No. 1.

HB 1888 makes voting easier by directing local officials to keep polling places open for longer. It also prevents an abuse of the electoral system Texans had seen all too frequently: local officials picking and choosing their voters by strategically opening polling places for limited hours in shifting locations.

Plaintiffs' claims attacking this broadly beneficial voting law are jurisdictionally barred and fail on the merits.  The Secretary of State plays no role in selecting polling places or implementing HB 1888.  As the Fifth Circuit confirmed just two weeks ago, Plaintiffs cannot sue the Secretary for the decisions of local officials or challenge a statute she does not enforce.  *City of Austin v. Paxton*, No. 18-50646, 2019 WL 6520769, at *6, — F.3d — (5th Cir. Dec. 4, 2019).  Plaintiffs lack standing to do so, and sovereign immunity bars their claims.

Moreover, Plaintiffs lack standing to challenge HB 1888 regardless of who they sue.  Their purported injuries are speculative, not certainly impending.  Plaintiffs do not plausibly allege that any particular local officials will choose polling places inconvenient for Plaintiffs.

On the merits, HB 1888 is constitutional.  It does not burden anyone's right to vote, and there is no constitutional right to early voting—let alone a right to vote at a particular location open for a particular time.  HB 1888 protects the State's weighty interests in preventing gamesmanship by local

---

[1] This case is virtually identical to *Gilby, et al. v. Hughs*, Case No. 1:19-cv-01063 (W.D. Tex.), which is also pending before the Honorable Lee Yeakel.

officials, avoiding voter confusion, and increasing voter opportunities.  HB 1888 also satisfies the Equal Protection Clause because it applies equally to everyone.  For similar reasons, HB 1888 does not violate the Twenty-Sixth Amendment because it does not deny or abridge anyone's right to vote on account of age.  Finally, HB 1888 does not violate Title II of the Americans with Disabilities Act. It applies equally to all voters and has no bearing on accessibility to the vote for individuals with disabilities, who already have ready access to the early voting process via mail-in balloting, and whom Texas law protects through separate provisions of the Election Code.

The Texas Secretary of State respectfully requests that the Court dismiss Plaintiffs' claims for lack of subject-matter jurisdiction and failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(1), (6).

## BACKGROUND

Texas legislators noticed a problem in Texas elections: "the selective harvesting of targeted votes" by local officials.[2]  Some local officials improperly sought to influence the vote by strategically establishing polling places in particular locations for limited times.  *See, e.g.*, Compl. ¶ 13.

The Legislature remedied that problem by passing HB 1888.  It prevents local officials from engaging in selective vote harvesting by requiring early voting polling places to be open throughout the early voting period.  *See* Tex. Elec. Code § 85.064 (requiring "each temporary branch polling place" to be open "the days that voting is required to be conducted at the main early voting polling place" for, in most cases, at least eight hours per day).  Thus, the times and locations of early voting polling places will be clearer to all voters, not just those favored by certain local officials.

But that is not the only benefit of HB 1888.  It also prevents voter confusion by making polling places easier to find.  Now, when a voter sees an early voting polling place, he can be confident that

---

[2]  Statement of Rep. Bonnen to Elections Committee at 10:11–10:15 (Mar. 11, 2019), https://tlchouse.granicus.com/MediaPlayer.php?view_id=44&clip_id=16486.

polling place will still be there if he returns later.  Moreover, HB 1888 also increases opportunities to vote by increasing the amount of time that polling places remain open.

ARGUMENT

## I.     The Secretary of State Is Not a Proper Defendant

Plaintiffs complain about the locations of voting sites.  But the Secretary does not determine those locations; local officials do.  Plaintiffs claim HB 1888 will affect the decisions local officials make.  But the Secretary does not enforce HB 1888.  Enforcement is instead through election contests filed by losing candidates.  And just two weeks ago, the Fifth Circuit confirmed that Plaintiffs cannot sue the Secretary for things she does not do. *Paxton*, 2019 WL 6520769, at *6.

### A.     The Secretary Does Not Determine Voting Sites or Enforce HB 1888

Under Texas law, local officials determine the location of voting sites.  *See* Tex. Elec. Code § 85.061; *id.* § 85.062(a).  Indeed, Plaintiffs concede as much.  *See, e.g.*, Compl. ¶¶ 17–18. (discussing how Travis County established voting locations during the 2018 election).

Local officials also operate those voting sites.  *See* Tex. Elec. Code § 61.002.  Thus, they implement HB 1888 by ensuring those polling places are open at appropriate hours.  *See id.* § 85.064.  Local officials have independent legal obligations to comply with HB 1888, regardless of any action or inaction by the Secretary of State.

The Secretary does not supervise local officials' compliance with HB 1888, and she is not empowered to ensure or prevent such compliance.  To the extent local officials do not comply with HB 1888, their actions may be reviewable in an election contest.  *See* Tex. Elec. Code § 221.003(a).  But that is a private cause of action brought by the losing candidate, not an enforcement action brought by the Secretary of State.  *See id.* § 232.002.

Although the Election Code charges the Secretary of State with "obtain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of this code," *id.* § 31.003, it does not

3

provide her the power to coerce local officials.  Instead, it authorizes the Secretary of State to "assist and advise all election authorities with regard to the application, operation, and interpretation of this code."  *Id.* § 31.004(a).  Thus, the Secretary "maintain[s] an informational service for answering inquiries of election authorities relating to the administration of the election laws or the performance of their duties."  *Id.* § 31.004(b).  The Secretary's other enforcement powers would not allow her to coerce a local official in a case like this.  *See, e.g., id.* § 31.005.

In light of the Secretary's limited role under state law, Plaintiffs' claims suffer from two jurisdictional defects: (1) Plaintiffs cannot overcome sovereign immunity, and (2) they lack standing.

## B.    Plaintiffs Cannot Overcome Sovereign Immunity

Sovereign immunity bars Plaintiffs' claims.  "[T]he principle of state-sovereign immunity generally precludes actions against state officers in their official capacities, subject to an established exception: the *Ex parte Young* doctrine."  *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).  Thus, Plaintiffs' claims fail unless they fit the *Ex parte Young* exception.

*Ex parte Young* "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.  The doctrine is limited to that precise situation . . . ."  *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted).  As a consequence, *Ex parte Young* applies only when the defendant enforces the challenged statute.  *See Ex parte Young*, 209 U.S. 123, 157 (1908); *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).

As the Fifth Circuit recently explained, even when a government official "*has* the authority to enforce" a challenged statute, a plaintiff still must show the official "is likely to do [so] here."  *Paxton*, 2019 WL 6520769, at *6.  Without evidence of likely enforcement, the government official "lacks the requisite connection to the enforcement of" the challenged law.  *Id.* (quotations omitted).

This case follows *a fortiori* from *Paxton*.  As explained above, the Secretary *cannot* enforce HB

4

1888.  She does not enforce the law herself, nor does she control local officials' enforcement of it. She therefore necessarily lacks any connection to the challenged statute for purposes of *Ex parte Young*. Plaintiffs have not, and cannot, plausibly allege that the Secretary "is likely to" enforce HB 1888. *Paxton*, 2019 WL 6520769, at *6.

Even if the Secretary could control local officials' enforcement, a federal court could not order her to exercise such power.  Sovereign immunity forbids it.

The *Ex parte Young* exception is limited to prohibitory injunctions "prevent[ing] [a state official] from doing that which he has no legal right to do." *Ex parte Young*, 209 U.S. at 159.  It does not authorize mandatory injunctions directing "affirmative action." *Id.*; *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949).  Thus, sovereign immunity bars "cases where the [defendant] sued could satisfy the court decree only by acting in an official capacity." *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971) (Frankfurter, J., dissenting). Even if the Secretary could control local officials, she could do so only in her official capacity, and sovereign immunity does not allow a suit to compel affirmative action by a state official.

## C.  Plaintiffs Do Not Have Standing to Sue the Secretary

Additionally, Plaintiffs cannot establish standing to sue the Secretary because her actions do not cause their alleged injuries.  The locations of polling places depend on the decisions of local officials, not the Secretary of State.  Thus, Plaintiffs' asserted injuries—based on the alleged inconvenience of future polling places—are not "fairly traceable to the challenged action of the defendant"; they are "the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation and alterations omitted).

Plaintiffs' argument that HB 1888 will affect local officials' future decisions regarding future polling places is irrelevant.  To whatever extent that is true, *see infra* Part II, it means only that Plaintiffs can trace their purported injuries to *the statute*, not to *the Secretary*.  Whether HB 1888 causes Plaintiffs'

injuries is irrelevant to whether Defendant causes their injuries.  *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc); *Paxton*, 2019 WL 6520769, at *14; *Lewis v. Gov. of Ala.*, No. 17-11009, 2019 WL 6794813, at *7, — F.3d. — (11th Cir. Dec. 13, 2019).

For similar reasons, Plaintiffs' purported injuries are not redressable.  Relief against the Secretary would not accomplish anything.  Plaintiffs' requested injunction preventing the Secretary "from further maintenance, implementation or enforcement of HB 1888" would not meaningfully change the status quo. Compl. ¶ 33.  The Secretary does not implement or enforce HB 1888 anyway.[3]

Local officials, unaffected by the judgment in this case but bound by state law, would presumably continue to implement HB 1888, just as they do now.  Plaintiffs do not request an injunction ordering the Secretary of State to order local officials to disregard HB 1888, but even if they did, this Court could not grant it.  *See Okpalobi*, 244 F.3d at 427.

When, "[f]or all practical purposes," any relief entered against the defendant would be "utterly meaningless," the plaintiff cannot establish redressability.  *Id.* at 426.  That is the case here.

As a result, this Court lacks jurisdiction over Plaintiffs' claims.  The Secretary does not enforce the challenged statute, and she cannot control the local officials who do.  That means Plaintiffs cannot overcome the State's sovereign immunity and lack standing.

## II.    Plaintiffs Lack Standing to Challenge HB 1888

Regardless of who they name as defendant, Plaintiffs lack Article III standing because they

---

[3] That the Secretary is the "Chief Election Officer," Compl. ¶ 9, is irrelevant.  Although the Fifth Circuit once cited this statutory language in finding standing, *see OCA-Greater Hous. v. Tex.*, 867 F.3d 604, 613–14 (5th Cir. 2017), that case's reasoning does not apply when the challenged statute is enforced through a private cause of action.  In *Okpalobi*, the en banc Fifth Circuit found abortion doctors did not have standing to sue state officials regarding a law regulating their conduct because the law was enforced by a private cause of action, not by the state officials.  *See* 244 F.3d at 426–27.  But in *OCA-Greater Houston*, there was "no private right of action," so the court distinguished *Okpalobi*.  *OCA-Greater Hous.*, 867 F.3d at 613.  Here, there is a private right of action, so *Okpalobi* controls.  HB 1888 regulates local officials, and it is enforced through an election contest brought by the losing candidate, not the Secretary.

have not suffered cognizable injuries in fact.  In addition, Plaintiffs lack statutory standing because they cannot use Section 1983 to sue for alleged violations of third parties' rights.

### A.      Blodgett Has Not Alleged an Injury in Fact

The only individual plaintiff in this case, Terrell Blodgett, claims to be injured because he may not be able to vote at his residence, the Westminster senior living center, in 2020.  Compl. ¶¶ 6, 18. His concern is too speculative to support Article III standing.  HB 1888 sets the minimum number of hours that a polling place must remain open.  That is, it prevents polling places from closing too quickly.  On its face, HB 1888 makes voting easier, not harder.  That is not an injury in fact.

Plaintiffs rely on the theory that HB 1888 effectively forces local officials to choose less convenient polling places.  That is not true.  Under HB 1888, local officials have the option of retaining their previous polling places.  *See* Tex. Elec. Code § 85.064.  And which local officials will retain their previous polling places is a matter of speculation.  Although Plaintiffs suggest some local officials may react to HB 1888 by having fewer polling places open for more time (rather than more polling places open for less time), to the extent local officials pursue that path, whether any particular voter would be benefited or harmed is speculative.  In 2020, any given voter could have access to equally or more convenient polling places than he did in 2018.

The same is true for Blodgett.  Travis County officials could choose locations convenient for him.  Perhaps in 2020 they will locate a polling place near Westminster, or even at Westminster itself. Plaintiffs do not allege (nor could they) that Travis County will forever discontinue placing a polling location at Westminster. Nor do Plaintiffs plausibly allege that Blodgett cannot vote early by mail. *See* Tex. Elec. Code §§ 82.002, .003 (allowing qualified voters to vote by mail on account of disability or if the voter is 65 years of age or older on election day).  Assuming he can do so, he has not suffered an injury in fact. No voter has the right to dictate to a state his preferred method of voting. *See McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802 (1969); *Veasey v. Abbott*, 830 F.3d 216, 307 (5th

Cir. 2016) (Jones. J., concurring in part).

And even taking their allegations at face value, the assertion that Blodgett will be unable to utilize an early voting polling location at Westminster in future elections is, at best, speculative. Speculation about the decisions of local officials not before the Court cannot establish an injury in fact.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  Absent allegations establishing the locations of future polling places, which Plaintiffs lack, any risk of future injury is "too speculative" to satisfy the "the imminence requirement," requiring dismissal to avoid "the possibility of deciding a case in which no injury would have occurred at all."  *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 537 (5th Cir. 2019) (quotation omitted).  For the same reasons, Plaintiffs' allegations that young voters will not have access to early voting polling locations is speculative, too: they have no way of knowing whether local officials will establish polling places near their college campuses (or residences) or not. Absent more concrete and particularized allegations, no individual plaintiff can maintain standing to challenge HB 1888.  *See Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019).

**B.**    **The Texas Young Democrats and Texas College Democrats Lack Standing**

The Texas Young Democrats and Texas College Democrats do not have either associational standing or organizational standing.

**1.  Associational Standing**

A plaintiff cannot have associational standing unless one of its members would have standing to sue individually.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Ctr. for Biological Diversity*, 937 F.3d at 536.  Thus, Plaintiffs must "identify members who have suffered the requisite harm" for injury in fact.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009); *see also NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010) (requiring evidence of "a specific member").

Plaintiffs have identified only one voter, Blodgett, but they do not allege that he is currently a member of any of the Texas Young Democrats or the Texas College Democrats. He therefore cannot

give them associational standing.  Even if Plaintiffs purport to identify individual voters who are members of their organizations, that would not help Plaintiffs because no voter has standing for the reasons explained above.  *See supra* Part II.A. Accordingly, the Texas Young Democrats and Texas College Democrats lack associational standing.

## 2. Organizational Standing

Nor do the Texas Young Democrats or Texas College Democrats have organizational standing. They have not plausibly alleged that they, as organizations, will suffer injuries in fact.  An organization has standing to sue if it satisfies the same Article III requirements applicable to individuals: injury-in-fact, causation, and redressability.  *See City of Kyle*, 626 F.3d at 237 (citing *Lujan*, 504 U.S. at 560–61).  "[A]n organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to" conduct its routine "activities— with the consequent drain on the organization's resources."  *Id.* at 238 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  "Not every diversion of resources to counteract [a] defendant's conduct, however, establishes an injury in fact."  *Id.* Rather, any "[s]uch injury must be 'concrete and demonstrable.'"  *Id.*

Thus, to establish standing, "an organizational plaintiff must explain how the activities it undertakes in response to the defendant's conduct differ from its 'routine [] activities,'" and must "identify 'specific projects that [it] had to put on hold or otherwise curtail in order to respond to' the defendant's conduct." *Def. Distributed v. U.S. Dep't of State*, No. 1:15-cv-372, 2018 WL 3614221, at *4 (W.D. Tex. July 27, 2018) (quoting *City of Kyle*, 626 F.3d at 238).[4]

---

[4] *See also, e.g.*, *ACORN v. Fowler*, 178 F.3d 350, 358 (5th Cir. 1999) (holding that organization's expenditures must be "caused by an[] action by" the defendant that the organization "claims is illegal, as opposed to part of the normal, day-to-day operations of the group" to confer standing) (citing *Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers*, 141 F.3d 71, 78 & n.5 (3d Cir. 1998)); *Advocacy Ctr. v. La. Tech Univ.*, No. 18-cv-0934,

Plaintiffs conspicuously fail to allege that HB 1888 will cause Plaintiffs to change their behavior in any way. Their primary objectives are to "encourage and further state and local government actions to increase and enhance voter turnout." Compl. ¶¶ 7–8. Plaintiffs do not allege that HB 1888 prevents them from encouraging voters to turn out and vote. Thus, "Plaintiffs have not explained how the activities" they say HB 1888 leads them to undertake "differ from [their] routine [political] activities." *City of Kyle*, 626 F.3d at 238.

Second, "Plaintiffs have not identified any specific projects that [they] had to put on hold or otherwise curtail in order to respond to" HB 1888. *Id.*; *see also La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000).

Thus, Plaintiffs have not plausibly pled Article III standing. Their claims should be dismissed.

## C.   The Texas Young Democrats and Texas College Democrats Lack Statutory Standing

Even if the Texas Young Democrats or Texas College Democrats had Article III standing, they would still lack statutory standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (explaining statutory standing). Section 1983 provides a cause of action only when *the plaintiff* suffers "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It does not provide a cause of action to plaintiffs claiming an injury based on the violation of a *third party's* rights. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45.

Thus, Section 1983 follows the general rule that a plaintiff "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))

---

2019 WL 1303212, at *4 (W.D. La. Mar. 6, 2019), *report and recommendation adopted*, 2019 WL 1301983 (W.D. La. Mar. 21, 2019) (citing *ACORN v. Fowler*, 178 F.3d at 357–58).

(alterations in original).  When "[t]he alleged rights at issue" belong to a third party, rather than the plaintiff, the plaintiff lacks statutory standing, regardless of Article III standing.  *Id.*; *see also Conn v. Gabbert*, 526 U.S. 286, 292–93 (1999).

Here, all of Plaintiffs' claims depend on the right to vote.  Compl. ¶ 26 (basing Count I on "the right to vote"); Compl. ¶ 28 (basing Count II on the right to vote); Compl. ¶ 30 (basing Count III on the "abridgement of Plaintiffs' vote"); Compl. ¶ 32 (basing Count IV on the "exercise of the right to vote").  But the Texas Young Democrats and Texas College Democrats, as unincorporated associations, Compl. ¶¶ 7–8, do not have voting rights.  *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 546 (M.D. Pa. 2002); *see also Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 91 (2d Cir. 2015).  The Committee Plaintiffs are necessarily asserting the rights of third parties.

Plaintiffs therefore lack statutory standing to sue under Section 1983.  Because this follows from the statute itself, Plaintiffs cannot invoke any exceptions related to prudential standing.  *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).

But even if Plaintiffs could invoke prudential-standing exceptions, their complaint does not do so.  Plaintiffs do not plausibly allege that they have "a 'close' relationship with" voters, and there is no reason to think voters face any "hindrance" to protecting their "own interests."  *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

## III.    HB 1888 Is Constitutional

On the merits, Plaintiffs assert four claims: that HB 1888 (1) imposes an undue burden on the right to vote, Compl. ¶¶ 25–26, (2) violates the Equal Protection Clause, *id.* ¶¶ 27–28, (3) violates the Twenty-Sixth Amendment, *id.* ¶¶ 29–30, and (4) violates Title II of the Americans with Disabilities Act, *id.* ¶¶ 31–32.  All four claims fail as a matter of law.

### A.    HB 1888 Makes Voting Easier and Does Not Burden the Right to Vote

Plaintiffs' right-to-vote claim fails for two independent reasons.  First, HB 1888 does not

infringe the right to vote at all.  At most, it will affect one method of voting.  Plaintiffs have no constitutional right to early voting in the locations they deem most convenient.  Second, HB 1888 would easily pass constitutional muster under any standard of review because it makes voting easier and furthers weighty state interests.

### 1.    The Constitution Allows States to Regulate Early Voting

"The Constitution provides that States may prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives,' and the Court therefore has recognized that States retain the power to regulate their own elections." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting U.S. Const. art. I, § 4).  "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

HB 1888 provides order for Texas elections.  By regulating the hours of polling places, HB 1888 prevents gamesmanship by local officials and provides voters with much-needed certainty.

Plaintiffs claim this modest regulation interferes with the "right to vote."  Not so.  The Supreme "Court has often noted that the Constitution does not confer the right of suffrage upon any one," and that "the right to vote, per se, is not a constitutionally protected right." *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9 (1982) (quotations and citations omitted).  Of course, if "a state or locality provides for election of its representatives, a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Angel v. City of Fairfield*, 793 F.2d 737, 740 (5th Cir. 1986) (quotation omitted); *see also McDonald*, 394 U.S. at 807.

Thus, the Constitution does not include a freestanding right to vote in whatever manner Plaintiffs deem most convenient.  Considering a challenge to the limited availability of absentee ballots,

the Supreme Court distinguished "the right to vote" from the "claimed right to receive absentee ballots." *McDonald*, 394 U.S. at 807. The plaintiffs' inability to vote by mail did not implicate the right to vote because it did not "preclude[] [the plaintiffs] from voting" via other methods. *Id.* at 808. Having disposed of the right-to-vote issue, the Court then considered whether the differential access to voting by mail violated the Equal Protection Clause. *See id.* Applying rational basis, the Court concluded it did not. *See id.* at 809.

So too here. Plaintiffs never allege that HB 1888 will actually prevent Blodgett—or any other identifiable voter—from voting. Instead, they complain that HB 1888 will make it harder to vote early in person. As explained above, that is not what HB 1888 does. But even if it were, HB 1888 would remain constitutional. There is no constitutional right to early voting. To the extent individuals find in-person early voting inconvenient, they can vote on Election Day. And many voters, including Blodgett, are eligible to vote by mail. *See* Tex. Elec. Code §§ 82.002, .003 (allowing qualified voters to vote by mail on account of disability or if the voter is 65 years of age or older on election day). Plaintiffs do not allege any problems with those methods of voting.

Thus, HB 1888 does not prevent anyone from voting and does not implicate the right to vote. *See McDonald*, 394 U.S. at 807; *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 209 (2008) (Scalia, J., concurring in the judgment).

The *Anderson-Burdick* test, on which Plaintiffs presumably rely for their right-to-vote claim, applies only when a court "evaluate[s] a law respecting the right to vote—whether it governs voter qualifications, candidate selection, or the voting process." *Crawford*, 553 U.S. at 204 (Scalia, J., concurring in the judgment). That is because "[t]he right to vote derives from the right of association," as even the most expansive applications of the right to vote recognize. *Lubin v. Panish*, 415 U.S. 709, 721 n.* (1974) (Douglas, J., concurring) (quoting *Storer v. Brown*, 415 U.S. 724, 756 (1974) (Brennan, J., dissenting)).

13

The ability to vote for a particular candidate may implicate the right of association, *see Burdick*, 504 U.S. at 433, but HB 1888 does not. It is unlike the restrictive ballot-access laws in *Anderson* and *Burdick*, which would have prevented supporters of certain candidates from voting for those candidates. *Anderson v. Celebrezze*, 460 U.S. 780, 782–83 (1983); *Burdick*, 504 U.S. at 430.

Even if Westminster does not host an early voting polling place, Blodgett—like every other voter—remains free to vote for the candidate of his choice at other locations (and, in his case, through the mail). Local officials' decisions regarding the locations of early voting polling places may make "casting a ballot easier for some," but they do not create "an absolute denial of the franchise." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 n.6 (1969). And if Blodgett declines to take advantage of other methods of voting, the failure to vote is attributable to him alone. *See Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973).

Thus, the right to vote is not implicated here. That alone is sufficient reason to dismiss Plaintiffs' right-to-vote claim and apply rational-basis review to their equal protection claim. *See McDonald*, 394 U.S. at 807–09; *infra* Part III.B (addressing equal protection).

## 2. In Any Event, HB 1888 Satisfies *Anderson-Burdick*

If the Court concludes the right to vote is implicated, HB 1888 should easily pass muster under *Anderson-Burdick*. Any burden is *de minimis*, and the statute advances weighty State interests.

The first step of the analysis is to "weigh the character and magnitude of the asserted injury." *Burdick*, 504 U.S. at 434 (quotation omitted). As discussed above, HB 1888 requires that polling places stay open for a minimum number of hours. It prevents local officials from closing polling places early. Of course, keeping polling places open longer does not burden the right to vote. It makes voting easier, not harder.

Plaintiffs do not argue that HB 1888 imposes any of the burdens traditionally considered under *Anderson-Burdick*. It does not affect anyone's eligibility to vote. It does not affect anyone's ability to

appear on the ballot.  Any voter can vote for any candidate.  And it is undisputed that HB 1888's regulation of early voting polling places does not apply to Election Day voting.  *See* Tex. Elec. Code § 85.064(b) (addressing "[e]arly voting by personal appearance").

Plaintiffs have not plausibly alleged a burden on early voting either.  Under Plaintiffs' theory, the most HB 1888 could do is lead local officials to choose different polling places going forward. Plaintiffs' allegations provide no factual basis for determining which locations local officials might choose on a prospective basis.  HB 1888 does not prohibit polling places from being located on university campuses or anywhere else.  Thus, whether relevant local officials will accept or reject Plaintiffs' preferred locations is unclear.  To the extent there is a burden on early voting at all, it is contingent on the unknown future decision of local officials.

Even if that contingency comes to pass—that is, local officials do not establish early voting polling places on campuses or at Westminster (or other senior living centers)—the magnitude of the burden is likely to be quite small.  Local officials may put polling places very close to campuses or other places voters congregate, elderly and young alike.

Because HB 1888 does not seriously burden the right to vote, it is subject to relaxed scrutiny. *See Burdick*, 504 U.S. at 434.  HB 1888 survives any level of scrutiny.  It furthers weighty State interests, including preventing gamesmanship, avoiding voter confusion, and increasing opportunities to vote. *See Crawford*, 553 U.S. at 191 (plurality); *Burdick*, 504 U.S. at 433.

Preventing Gamesmanship:  Texas has an interest in preventing inappropriate electioneering through the location of polling places.  HB 1888 reduces the risk local officials will set up the polls at times and locations conducive to only certain segments of the population.  Plaintiffs acknowledge that legislators expressed concern about past instances of gamesmanship by local officials.  *See* Compl. ¶ 13; House Elections Comm., Bill Analysis, Tex. H.B. 1888, 86th Leg. R.S. (2019), https://capitol.texas.gov/tlodocs/86R/analysis/pdf/HB01888H.pdf#navpanes=0   ("[C]oncerns

have been raised about the possibility that some authorities accommodate certain voting populations to the exclusion of others.  H.B. 1888 seeks to address this issue by revising the temporary branch polling place hours of operation.").

Of course, preventing gamesmanship is a weighty state interest.  But preventing the appearance of gamesmanship is important too.  By avoiding the appearance of impropriety, HB 1888 improves citizen trust in government.

Avoiding Voter Confusion:  Texas also has an interest in preventing voter confusion.  During early voting, a Texas voter can vote at any voting site in his county.  Thus, if a voter sees an early voting location, he reasonably expects that, for the rest of the early-voting period, he can return to that location to vote.  When a polling place closes or moves in the midst of early voting, it causes voter confusion.

Increasing Opportunities to Vote:  HB 1888 increases voter opportunity by requiring polling places to stay open longer.  On its face, HB 1888 makes voting easier by leaving the number of polling places alone but extending the hours those polling places are open.

Plaintiffs counter that local officials may respond to HB 1888 by decreasing the number of polling places.  HB 1888 does not require that, but even assuming some local officials will react that way, HB 1888 can still increase voter opportunities in those localities.  For example, a county may increase the number of full-time early voting polling places while eliminating some other polling locations.  A preference for the full-time polling places is certainly reasonable.  Because part-time polling places are, by definition, open for fewer hours, full-time polling places may provide more hours of voting opportunities.

Plaintiffs suggest the Legislature should have limited HB 1888 to school bond elections.  *See* Compl. ¶ 13.  But limiting HB 1888 in that way would have reduced its effectiveness.  Gamesmanship can occur through strategic establishment of polling places in rural areas, nursing homes, and

universities just as it can occur elsewhere.  As Rep. Greg Bonnen explained to the Elections Committee: "While certainly bond elections in [school] districts have been really the most egregious example of this practice, it's not been isolated to those.  So I think it would be a little naïve to think no such thing has ever happened in an urban county during a general election."[5]

The Legislature had good reason not to exempt the locations favored by Plaintiffs.  And the State's interests in avoiding voter confusion and expanding opportunities to vote would have been undermined if the full-time requirement were not applied in those locations.  But even if HB 1888 were overinclusive, that would not cause it to fail *Anderson-Burdick* scrutiny.  "The fit between Texas's aims and the method used to obtain those aims need not be precise. Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by the state imperfect, it is nevertheless the rule that in a case like this perfection is by no means required." *Harris v. Hahn*, 827 F.3d 359, 369 (5th Cir. 2016) (quotations and brackets omitted).

For these reasons, HB 1888 does not violate anyone's right to vote.

### B.     Plaintiffs' Equal Protection Claim Also Fails

HB 1888 does not violate the Equal Protection Clause.  Plaintiffs have not plausibly alleged any invidious discrimination, and HB 1888 is supported by numerous rational bases.

HB 1888 applies equally to everyone.  It requires all early voting polling places to be open for a minimum number of hours, regardless of where they are located or who votes there.  The statute cannot provide any unequal advantage or disadvantage.  And Plaintiffs do not allege anyone will enforce this facially neutral statute a discriminatory way.  *Cf. Washington v. Davis*, 426 U.S. 229, 241 (1976).

---

[5] Statement of Rep. Greg Bonnen to Elections Committee at 22:16–22:33 (Mar. 11, 2019), https://tlchouse.granicus.com/MediaPlayer.php?view_id=44&clip_id=16486.

Plaintiffs' theory seems to be that the local officials' reactions to HB 1888 will have a disparate impact on older and younger voters.  For the reasons explained above, Plaintiffs' assertion is not plausible.  Local officials have the option of locating full-time polling places at previous part-time sites, and at least some of them seem to have decided to do so.  *See supra* Part II.A.  Further, even if local officials choose different sites, they may be equally or more convenient for any given voter.

Had Plaintiffs plausibly alleged a disparate impact, that would not be sufficient.  Disparate racial impacts, standing alone, do not violate the Constitution.  *See Washington*, 426 U.S. at 242.  So disparate impacts on "youth coming of voting-age and the elderly," Compl. ¶ 28, do not either.

Plaintiffs have not plausibly alleged discriminatory purpose.  Plaintiffs included conclusory assertions, on "information and belief," of discriminatory intent.  Compl. ¶ 15.  "These bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim, namely, that petitioners adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group.  As such, the allegations are conclusory and not entitled to be assumed true."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quotations and citations omitted)).

But even if Plaintiffs had alleged intentional discrimination, HB 1888 would still be subject to rational basis review. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83–84 (2000).  HB 1888 survives rational-basis review for the same reasons it survives the *Anderson-Burdick* framework.  *See supra* Part III.A.2.

**C.      HB 1888 Does Not Violate the Twenty-Sixth Amendment**

The Twenty-Sixth Amendment has nothing to do with HB 1888.  It provides: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age."  U.S. Const. amend. XXVI, § 1.  It applies only when the right to vote is "denied or abridged" and when that denial or abridgement is "on account of age."  Plaintiffs cannot satisfy either requirement.

As explained above, HB 1888 does not burden the right to vote, much less deny or abridge it. *See supra* Part III.A.  Even if all of Plaintiffs' speculation about the future decision of local officials turned out to be true, their worst-case scenario is that some students would find voting less convenient, not that anyone would be prohibited from voting.  *Nashville Student Org. Comm. v. Hargett*, 155 F. Supp. 3d 749, 757 (M.D. Tenn. 2015).  There is no violation when, as here, voters can overcome any alleged burden simply by expending a "reasonable effort."  *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 926 (W.D. Wis. 2016), *order enforced*, 351 F. Supp. 3d 1160 (W.D. Wis. 2019).

Nor does HB 1888 do anything "on account of age."  Any voter, regardless of age, can vote during the hours required by HB 1888.  That alone requires dismissal of Plaintiffs' claim.

Plaintiffs have not plausibly alleged a disparate impact on young or elderly voters.  *See surpa* Part III.B.  But even if they had, it would not suffice to state a Twenty-Sixth Amendment claim.  *See, e.g.*, *Lee v. Va. State Bd. of Elections*, 843 F.3d 592, 607 (4th Cir. 2016); *One Wis. Inst., Inc.*, 198 F. Supp. 3d at 926. Nor have Plaintiffs plausibly alleged any discriminatory intent.  *See supra* Part III.B.

### D.      HB 1888 Does Not Violate the ADA

Plaintiffs' ADA claim is not based on the text of HB 1888 and ignores multiple provisions in the Texas Election Code that accommodate voters with disabilities. A plaintiff suing under Title II of the ADA[6] must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). A plaintiff must establish intentional

---

[6] Blodgett's claim under the ADA should also be dismissed because he attempts to assert it through § 1983 rather than Title II. *See McCarthy v. Hawkins*, 381 F.3d 407, 415 (5th Cir. 2004). Also, it appears that the organizational plaintiffs are not asserting claims under the ADA. To the extent they may attempt to do so, the Secretary reserves the right to respond to such claims.

19

discrimination to win a Title II claim. *See Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 575 (5th Cir. 2002).

As discussed above, Plaintiffs cannot establish discrimination, let alone intentional discrimination, in the passage of HB 1888.  HB 1888 applies equally to everyone and does not discriminate, on its face or in effect, on the basis of disability.  Nor can Plaintiffs demonstrate that Blodgett is being "denied the benefits" of voting.  Not only is that allegation entirely speculative, but Plaintiffs ignore that Texas already provides robust protections for elderly voters and voters with disabilities. *See* Tex. Elec. Code §§ 82.002, .003 (allowing qualified voters to vote by mail on account of disability or if the voter is 65 years of age or older on election day).  Plaintiffs do not allege that Blodgett is ineligible or unable to vote early by mail, which is fatal to their ADA claim.

Even if Blodgett is unable to vote early by mail, he offers no plausible allegations that other early voting locations (or locations available on election day itself) are inaccessible for individuals with disabilities. Plaintiffs allege that "post-HB 1888 facilities for early voting in person are effectively inaccessible and unusable" to Blodgett because of his disabilities, Compl. ¶ 20, but Plaintiffs disregard the significant accommodations Texas law already offers to voters with disabilities. The in-person process accommodates voters with disabilities by, *inter alia*, allowing them to vote curbside, allowing them to be assisted by an assistant of their choosing if they wish, and allowing local election officers to modify procedures as necessary to ensure voters with disabilities are able to vote. Tex. Elec. Code § 64.009. Texas law also requires that polling places provide voting stations that comply with Title II and that "provide[] a practical and effective means for voters with physical disabilities to cast a secret ballot." *Id.* § 61.012(a)(2). If any polling place fails to make those accommodations, an ADA claim might lie against the entity that operates that location. It certainly would not lie against the Secretary of State, who, as discussed above, does not administer individual polling locations.

## CONCLUSION

The Secretary respectfully requests that the Court dismiss Plaintiffs' Original Complaint.

Date: December 17, 2019

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

Respectfully submitted.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Associate Deputy for Special Litigation

TODD LAWRENCE DISHER
Deputy Chief, Special Litigation Unit

MATTHEW H. FREDERICK
Deputy Solicitor General

WILLIAM T. THOMPSON
Special Counsel for Civil Litigation

MICHAEL R. ABRAMS
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-076)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov
todd.disher@oag.texas.gov
matthew.frederick@oag.texas.gov
will.thompson@oag.texas.gov
michael.abrams@oag.texas.gov

**COUNSEL FOR THE TEXAS SECRETARY OF STATE**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 17, 2019, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN